## LAOMI MCARTHUR v. ELIZA FRY, *et al.*

ATTORNEY AND CLIENT; *Contract of Employment; Fidelity and Diligence of Attorney required.* Where an attorney is employed to attend to a suit about certain specified lands, "and to attend to all other litigations concerning said lands, he agreeing to attend to the same and to furnish all moneys necessary to conduct said litigation," and at the time is engaged in prosecuting an action for another party in reference to the same land, adverse in interest to that of his employer, and continues to prosecute such adverse action, his client has sufficient grounds to discharge said attorney; and when she has done so he cannot demand a specific performance on the client's part of the terms of the contract of employment.

*Error from Jefferson District Court.*

MCARTHUR, an attorney-at-law, brought his action to compel the specific performance of a certain contract, (which is set forth in full in the opinion.) The deed mentioned in the contract was executed by the defendant *Eliza Fry,* (by her then name of "Eliza Byron,") on the 3d of March 1862. *McArthur* in his petition alleges that he brought and prosecuted several actions successfully to set aside and cancel certain assessments and levies made upon, and certain tax certificates issued on tax sales of, the surveys or lands mentioned in said contract, and brought and prosecuted through several terms of the district court an action against George W. Ewing to set aside the deed executed by said *Eliza* to him, and had paid out and expended large sums of money in and about said suits and proceedings, and for the protection of the interests of said *Eliza,* and was diligently and faithfully prosecuting said action against said Ewing, as her said attor-

16—10 KAS.

ney, etc., when said Eliza, in January 1866, without suffi-
cient cause dismissed him as her attorney, withdrew her
business and suits from his control and placed them in the
hands of other counsel, etc. The petition further alleges
that the said deed to said Ewing, was, by the judgment and
decree of the district court of Jefferson county, at the April
Term 1866, set aside and annulled, and that he is ready and
willing to pay the stipulated sum of $1,000, as provided in
the contract, which sum he brings into court, and prays that
said *Eliza*, and those claiming from and under her, may be
decreed to convey to the plaintiff her interest in the surveys
or lands mentioned in said contract. The case was tried at
the July Term 1868 of the district court. The court found
for the defendants, and the plaintiff brings the case here on
error. Other facts are stated in the opinion. [The transcript
contains 242 pages. The petition in error specifies 45 causes
for reversal for alleged error. The briefs are very volu-
minous, and being mainly upon questions not considered or
decided by the court, are omitted.]

*D. Brockway, John Guthrie,* and *L. McArthur,* for plaintiff.

*Clough & Wheat,* for defendants in error.

The opinion of the court was delivered by

KINGMAN, C. J.: This was an action brought by the plain-
tiff in error to compel the execution of the following con-
tract:

"I do hereby employ and retain L. McArthur, of Topeka,
Shawnee county, state of Kansas, to institute suit against
George W. Ewing to set aside a deed executed by me to him
for my undivided interest in surveys 19, 20, 21 and 22, of
the Kansas Half-Breed lands, situated in Jefferson county,
state of Kansas, on the north bank of the Kansas river,
reserved to the four children of Cecile Compare, by the
Treaty of A.D. 1825, between the United States and the
Kansas Nation of Indians, and to attend to all other litiga-
tions concerning said land, he agreeing to attend to the same,
and to furnish all moneys necessary to conduct said litigation,

and when the title to said land is settled in my favor and against said Ewing, and all others adversely claiming the same, then to pay me the further sum of one thousand dollars, and for and in consideration of the legal services aforesaid, and the moneys aforesaid, I do hereby agree to execute and deliver to him, said L. McArthur, his heirs or assigns, a good and sufficient deed, with the proper covenants of warranty, of my interest in said land; the same being survey 20, as partitioned by the district court of Jefferson county aforesaid, excepting and reserving therefrom the northeast quarter of said section 20. Given under my hand and seal this 8th day of March, A.D. 1864. Done at St. Louis, Missouri.

"PELAGIA *alias* ELIZA ⋈ FRY. [SEAL.]
                         her
"*Attest: Mary Lawson.*"         mark.

The district court refused to grant the relief prayed for, and that decision the plaintiff in error seeks to have reversed in this court. Before the plaintiff would be entitled to the execution of the contract he must show that he has in all respects performed the stipulations on his part. This he fails to do; but presents as his sufficient reason for not doing so, that on the 10th of January 1866, he was by the act of Eliza Fry prevented from further prosecuting a suit in her favor against Ewing to have his deed set aside; that up to that time he was diligently and faithfully, and with due skill, proceeding in the discharge of the duties of his employment. That he was so prevented is clear. But it is contended that the plaintiff in error by obtaining interests adverse to Eliza Fry, and by his engagements in other suits in relation to this same land adverse to the interests of Eliza, had given her the right to discharge him from further service in the case, or in any other matter connected with his said employment; and whether this was so is the only question we shall discuss, for in our judgment this finally disposes of the case. The facts were found by the court, and all the evidence is preserved, which makes a record that is simply enormous, and no good can accrue to the profession or the cause of justice by an examination of the vast array of facts preserved in the record. It appears from the case that Eliza Fry was the owner of

one-third interest in surveys No. 19, 20, 21, and 22 of the Kansas half-breed lands situated in Jefferson county; and whether a certain partition of surveys No. 19, 20 and 21, that had been made by which it is alleged Eliza Fry had become the sole owner of survey No. 20, was a valid one, need not be determined. If it was valid, then she owned the whole of No. 20, and an undivided one-third of No. 22. If the partition was not valid, then she owned an undivided one-third of all four numbers; and either way she was the owner of an undivided one-third of No. 22. Now, when McArthur took the obligation on which this action was founded he was prosecuting an action to recover the whole of No. 22 for Bowker, the guardian of Charles Lecompte, who could only recover upon a theory wholly inconsistent with the rights of Eliza Fry in said No. 22. This employment was not disclosed to Mrs. Fry. Thus the plaintiff in error was undertaking a duty in favor of Mrs. Fry which he could not perform by reason of his previous obligation to another client. It is true that Mrs. Fry did not seem to lay claim to any part of the land except No. 20, in the conversations between herself and McArthur that preceded the making of the contract, and he insists that now she is precluded from asserting any claim thereto as against him. But this is clearly a mistake. The written contract speaks for itself. Her interests in all four of the numbers is to be protected by him, whatever those interests might be. There is no limitation, and no reservation. Conversations that led to the employment and the making of the contract cannot be used to contradict the written contract. Another reason equally good might be given: She was ignorant; could not read or write; had no acquaintance with the land, and resided far from it. As her lawyer, it was the duty of plaintiff in error to inform her of her rights, and not his privilege to rely upon her ignorance of them to build up rights for himself, or others, adverse to hers. But it is claimed that McArthur himself did not know that Eliza had any interest in No. 22, and this may be conceded as true. The matter seems to have been

in doubt.   Still it most clearly appeared from his own testimony that it was a disputed question at that time.   Both himself and Eliza spoke of it as such.   Her rights in that number, depended upon the question of whether "Charlie" was a reservee or not.   Now conceding that McArthur believed that "Charlie" was a reservee, and therefore Eliza had no interest in number 22, still it was his duty to protect her rights in all four of the numbers, a duty plainly assumed in the written contract which he took from her.   If after assuming that duty he made a mistake in his opinion as to Eliza's rights, he made it at his peril, and cannot build upon such mistake any rights for himself as against her.   The case stands then, after accepting the agreement in which it is recited that plaintiff in error was employed by her to protect her interests in all four of the numbers, as an attorney-at-law, he still continued to prosecute a suit for another on a theory adverse to her interests in No. 22; and while he was so prosecuting said action to recover the whole of 22 for "Charlie" he was discharged by Eliza, and her interest in pending actions confided to other lawyers.   We think the facts justified her in the course she took.   She had a right to his entire services as an attorney so far as the land in the contract was concerned; and the fact that he was prosecuting a suit adverse to her interest in number 22 was sufficient cause for her to withdraw her confidence from him and place her interests in the hands of others.   The plaintiff in error seems to feel the force of this argument, for he insists that the testimony which supports this finding of the court was improperly admitted under the issues as made up.   We do not think so.   It was imperative on the plaintiff in error to aver and prove that he faithfully and diligently, and with reasonable skill, proceeded in taking such steps as his client's interests demanded, and accordingly we find an averment in his petition that he did so, until he was discharged by Mrs. Fry.   To this there was a general denial.   Under this averment we understand the plaintiff might prove any fact that tended to show the correct performance of his duty; and

under the denial of the averment in the answer it was competent to show any want of fidelity to his client in and about the business he was employed in. This conclusion necessarily leads to an affirmance of the judgment, and renders it unnecessary to further discuss the numerous other questions raised in the case, though it is probable that the determination of some of the others would lead to the same conclusion. Judgment affirmed.

All the Justices concurring.