HYMAN BLOOM, Plaintiff, *v.* IRVING TRUST COMPANY, Defendant.
(LOUIS I. HOCHSTEIN.)

Supreme Court, New York County, April 13, 1934.

*Harry Sacher*, for the plaintiff, for motion.

*Louis I. Hochstein*, appearing in person, opposed.

SHIENTAG, J. An application was heretofore made by the plaintiff for an order of substitution of attorneys and directing that the discharged attorney turn over all papers in his possession belonging to the plaintiff and relating to the pending action. The court granted the motion, directed that the papers be turned over and ordered that the discharged attorney " have a lien upon any settlement or judgment herein to the extent of 25% of such settlement or judgment, which said percentage is fixed as the fair and reasonable value of the services rendered to the plaintiff."

The attorney had been retained on the basis of a contingent fee of fifty per cent of the amount of any recovery. Concededly his contract of retainer was terminated without cause. The plaintiff appealed from so much of the order as fixed the fair and reasonable value of the services of the discharged attorney at twenty-five per cent of any settlement or judgment and gave him a lien therefor. The discharged attorney took no appeal. He had asked that his fee be fixed at twenty-five per cent of the amount of any recovery and that his lien therefor attach to the proceeds of the action. He was not in position, therefore, to take any appeal. The Appellate Division ordered that the order so far as appealed from be " reversed * * * and the matter remitted to Special Term to determine the value of respondent's services and fix the amount of his lien."

The matter was sent to an official referee who took testimony and reported that in his opinion the fair and reasonable value of the services rendered by the displaced attorney was the sum of $275. The report of the referee was confirmed. Conflicting orders have been submitted thereon. The order of the plaintiff provides that the discharged attorney have a lien in the sum of $275 upon any settlement or judgment obtained in the action. The order submitted by the discharged attorney provides that the sum of $275 be paid to him forthwith, and that all proceedings on the part of the plaintiff in the action be stayed until such payment is made.

The attorney for the plaintiff contends that the order of the Appellate Division limits this court solely to a consideration of the reasonable value of the attorney's services and that in all other respects the prior order of this court stands. This contention is without merit. The order of substitution stands but the action of the extent and character of the attorney's lien remains open for adjudication. If, as the plaintiff urges, the discharged attorney in seeking the court to fix his fee on a percentage basis contingent upon the outcome of the litigation and to have his lien attach to the proceeds thereof is thereby deemed to have waived any retaining lien on papers in the action in his possession, it can hardly be said that

any such waiver would attach where the appellate court determined upon an entirely different basis for fixing the amount of the attorney's lien. It may be helpful, therefore, to summarize the law applicable to the discharge and substitution of attorneys as it has been laid down in various court decisions.

(1) Where an attorney has been retained on the basis of a fixed or contingent fee, and is discharged for cause, he may not recover any compensation at all. The contract is an entire one and as in any other contract, the attorney must show proper performance in accordance with his retainer before he is entitled to compensation. (*Matter of Badger*, 9 F. [2d] 560, C. C. A. 2d Circuit.)

(2) Notwithstanding a retainer providing for fixed or contingent compensation to an attorney, the client may at any time, with or without cause, for any reason however arbitrary, discharge the attorney before he has fully completed the services called for by his retainer. Cancellation of the contract by the client does not entitle the attorney to sue for damages for the breach thereof. He is entitled only to be compensated on the basis of *quantum meruit* for the fair and reasonable value of the services that he rendered up to the date of his discharge. (*Matter of Dunn*, 205 N. Y. 398; *Martin* v. *Camp*, 219 id. 170; *Matter of Krooks*, 257 id. 329; *Matter of Tillman*, 259 id. 133; *Matter of Lydig*, 262 id. 408.)

(3) While the client is entitled to cancel the contract of retainer at any time, the agreement cannot be partially abrogated; either it " wholly stands or totally falls. After cancellation, its terms no longer serve to establish the sole standard for the attorney's compensation. Together with other elements, they may, however, be taken into consideration as a guide for ascertaining *quantum meruit.* * * * The value of one attorney's services is not measured by the result attained by another." (*Matter of Tillman*, 259 N. Y. 133, 135.) On the termination of the contract for retainer, a cause of action for the reasonable value of his services immediately accrues to the attorney. (*Matter of Tillman, supra,* 136.) The court, therefore, except on the consent of the parties, may not in such event fix the compensation of the discharged attorney on a contingent basis dependent upon the final outcome of the suit. Since the discharged attorney, on the termination of the contract of retainer, is at once entitled to enforce his claim by action, he need not in a proceeding to fix the amount of his lien " be compelled to await the outcome of the litigation from which he has been displaced." (*Matter of Tillman, supra,* 136.) The discharged attorney is entitled on the termination of his contract to have the reasonable value of his services determined by the court and his lien fixed therefor.

(4) The attorney is not entitled to have the amount fixed by the court as the value of his services paid as a condition to the granting of an order of substitution. Whatever doubt there may have been on this point under the decision in *Matter of Tillman* (*supra*) has been completely dispelled by the recent decision of the Court of Appeals·in *Matter of Lydig* (*supra*), where the court held: "A client has an absolute right to discharge his attorney with or without cause at any time so that we must grant the motion for substitution and make the order accordingly. This order of substitution, however, is without prejudice to or interference with any lien which [the discharged attorney] has both upon the papers of the client in this or any other cause and upon the cause of action or the proceeds thereof."

(5) In order to secure payment by the client of the reasonable value of the attorney's services, "the attorney has two kinds of lien — a general lien for the entire balance of account on all papers, securities or moneys belonging to his client which came into his possession, and a charging lien for services rendered in a particular action or proceeding upon his client's cause of action. The general or retaining lien is dependent upon possession; the charging lien was created ' to save the attorney's rights where he had been unable to get possession.' " (*Robinson* v. *Rogers*, 237 N. Y. 467, 470.)

(6) It has been the well-established practice of our courts to compel the discharged attorney to deliver up papers in his possession belonging to his client, where necessity exists therefor, upon the furnishing of such security as the court deems just and proper, although through such delivery the attorney's retaining lien was destroyed. This has been done on the theory that "where the retention of papers by an attorney serves to embarrass a client the attorney should be required to deliver up the papers upon receiving proper security for his compensation, because insistence upon his lien under such circumstances is not in accordance with the standard of conduct which a court may properly require of its officers." (*Robinson* v. *Rogers, supra,* 473.) The courts have not laid down any definite rules with respect to the circumstances under which a discharged attorney may be directed, prior to the payment of his fee, to turn over to his former client any papers in the action on which the attorney has a retaining lien. Perhaps no ruling of general application dealing with this subject is possible or advisable. It may be that the matter should be left to the discretion of the justice to whom the application to turn over the papers is made. The circumstances of a case may determine what conditions may be imposed in the way of security to the attorney as a prerequisite to directing him to turn over papers in his possession and thus relin-

quish his lien thereon. In the light of the foregoing, therefore, the following conclusion is reached:

The order of substitution stands; the substitution of attorneys and further proceedings in the action are to be conditioned upon the payment to the discharged attorney of the amount fixed as the fair and reasonable value of his services; the attorney is to have a lien for such amount on the proceeds of the action by way of settlement or recovery. He has an immediate cause of action against his former client for the value of his services if he chooses to resort to that form of relief. He also has a retaining lien on all papers relating to the action in his possession. The order of substitution, therefore, should be without prejudice to, or interference, with any lien which the discharged attorney has upon the papers of the client in the pending suit or any other cause. If it is necessary to have the attorney turn over any papers in his possession to the substituted attorney, an application therefor should be made so that the court may have all the facts before it to aid it in arriving at a determination as to the necessity for directing the turning over of the papers and the conditions under which such direction should be made. This matter was not litigated before and both parties should have an opportunity to present the matter in proper form for the consideration of the court.

Settle order on notice in accordance with the foregoing decision.