The **WESTERN CASUALTY AND SURETY COMPANY**, Appellant,

v.

**J.R. PREIS, d/b/a Coastal Bend Sales**, Appellee.

No. 13–84–188–CV.

Court of Appeals of Texas, Corpus Christi.

May 30, 1985.

Rehearing Denied June 28, 1985.

Gary Norton, Corpus Christi, for appellant.

Charles R. Cunningham, Corpus Christi, for appellee.

Before BISSETT,[1] UTTER and KENNEDY, JJ.

OPINION

BISSETT, Justice.

This is an appeal from a judgment rendered in a cause of action involving a Comprehensive General Liability Insurance Policy sold by appellant to appellee. Trial was to the court. Judgment was rendered that appellee (plaintiff in the trial court) recover from appellant (defendant in the trial court) the sum of $124,548.05, plus attorney's fees. At issue in this appeal are appellant's obligations to appellee under the supplemental payment provision contained in the insurance policy appellant issued to appellee.

---

1. Associate Justice, Court of Appeals, Thirteenth Supreme Judicial District (Ret.), sitting by designation. *See,* Art. 1812, as amended.

Appellee sued appellant upon an insurance policy, which appellant issued to appellee for a policy period from October 1, 1974, to October 1, 1975. The insurance policy's limit of liability for bodily injury was $100,000.00. On January 13, 1975, during the policy period, Jesse Perez, who was a tenant in one of appellee's apartments, died of a carbon monoxide suffocation allegedly caused by a defective wall heater and its venting system. His wife and their children, in a separate and distinct cause of action, obtained a judgment against appellee and a third party (the Dover Corporation), jointly and severally, in the amount of $950,000.00. On appeal of this judgment, our Court, on August 30, 1979, ordered that a remittitur be filed.[2] A remittitur of $350,000.00 was made and the judgment, as reformed, was affirmed by our Court.[3] This action will henceforth be referred to as the "Perez Case," and the judgment rendered therein will be referred to as the "Perez Judgment."

The joint and several judgment against appellee and the Dover Corporation after remittitur was $600,000. Judgment was rendered on February 6, 1978, and bore interest at the rate of 9% per annum. Appellant did not pay any portion on its policy limits or on the accrued interest on appellee's portion of the judgment until October 21, 1980, when it paid $114,523.19. According to a letter dated this same date, the payment represented "payment of the policy limits of Western Casualty & Surety Company, together with interest from [the] date of judgment[.]" On November 4, 1980, appellant made an additional payment of $9,273.61. This additional amount was to supplement the first amount and was to offset a "miscalculation of the interest amount due[.]" On January 15, 1981, Liberty Mutual Insurance Company, the insurance carrier for the Dover Corporation, hereinafter called "Liberty Mutual," in connection with the Dover Corporation's liability on the judgment, after allowing credit for appellant's payments, paid $500,000,

the portion remaining on the judgment, plus interest, and thereafter sought contribution against appellee. Liberty Mutual then obtained a promissory note (secured by a deed of trust) from appellee in the principal amount of $257,000.00, payable as therein provided. The insurance policy in question contained the following provision:

The Western will pay, in addition to the applicable limit of liability:

(a) all expenses incurred by The Western, all costs taxed against the insured in any suit defended by the Western and all interest on the entire amount of any judgment therein which accrues after entry of the judgment and before The Western has paid or tendered or deposited in court that part of the judgment which does not exceed the limit of the Western's liability thereon;

That provision furnished the basis on which appellee's contractual action, hereinafter mentioned, was grounded.

Suit was initially filed by appellee against appellant on January 4, 1980. It was docketed as No. 80–45–B. This was a tort action. Appellee alleged that appellant refused to timely tender the insurance coverage ($100,000) under the aforesaid insurance policy, and that its refusal was negligence which resulted in damage to appellee. In appellee's Second Amended Original Petition, which was filed on April 15, 1983 (his trial petition), two separate causes of action were plead. They were: 1) that when appellant paid the $100,000 limit of liability plus $23,796.81 interest on the Perez Judgment, appellant was in breach of contract as a result of its failing to pay additional interest which had accrued on the entire amount of the Perez Judgment attributable to Preis separately, or $300,000 (hereinafter called the "contractual claim"); and 2) that in the prior case filed by Sylvia Perez and her children against the Dover Corporation and appellee, appellant was negligent by its failing

---

**2.** *Dover Corporation v. Perez*, 587 S.W.2d 761 (Tex.Civ.App.—Corpus Christi 1979, writ ref'd n.r.e.).

**3.** 591 S.W.2d 574.

to settle the Perez claims against appellee, before the voir dire examination of the jury, for the $100,000 limit of liability provided for in appellee's insurance policy with appellant. (hereinafter called the "negligence claim.")

On April 25, 1983, both causes of action went to trial before a jury. It was subsequently agreed by the parties that only the issues raised in the negligence action would be submitted to the jury for determination, and that the issues raised in the contractual action would be submitted to the court for decision. The jury, by its verdict, found that appellant "was not negligent" in the negligence action and judgment was duly rendered on the verdict. A new trial was subsequently granted on the negligence claim.

After the jury's verdict on May 4, 1983, appellee, on May 24, 1983, filed a motion for severance of the contractual action from the case and for rendition for judgment on the contractual claim. The claim was then severed by the trial court from the remainder of the case and was given a new docket number (no. 80–45–½–B). Trial in this claim was to the court. Final judgment in the contractual action was signed on February 24, 1984. It decreed, in part:

It is therefore ORDERED, ADJUDGED and DECREED that the Plaintiff J.R. Preis, d/b/a/ Coastal Bend Sales, do have and recover of the Defendant The Western Casualty and Surety Company in this severed contractual cause of action the sum of One Hundred Twenty-Four Thousand Five Hundred Forty-Eight Dollars and Five Cents ($124,-548.05) with post-judgment interest thereon at the rate of ten percent (10%) per annum until paid, together with one-half (½) of all costs expended in Cause No. 80–45–B before this cause was severed therefrom and all costs which accrue in this cause subsequent to the date this severance order is signed in this Court and that Plaintiff have his execution.

The trial court made the following findings of fact:

1. When Jesse Perez died in Plaintiff J.R. Preis's apartment on January 13, 1975, which death was caused by improper venting in the apartment in violation of the City Building Code and other negligent acts (see record in Cause No. 75–3640–D, styled 'Sylvia Perez, etc. v. Dover Corporation, et al,' all of which was introduced into evidence in this cause), the Plaintiff J.R. Preis, d/b/a Coastal Bend Sales, was covered by a liability insurance policy CGA 787757 issued by Defendant The Western Casualty and Surety Company to J.R. Preis, d/b/a/ Coastal Bend Sales, with limits of $100,-000 per claim.

2. The said policy contained the following Supplementary Payments provision:

SUPPLEMENTARY PAYMENTS

The Western will pay, in addition to the applicable limit of liability:

(a) all expenses incurred by the Western, all costs taxed against the INSURED in any suit defended by The Western and all interest on the entire amount of any judgment therein which accrued after entry of the judgment and before The Western has paid or tendered or deposited in court that part of the judgment which does not exceed the limit of The Western's liability thereon.

3. The Trial Court in Perez rendered a joint and several judgment against Dover Corporation and J.R. Preis, individually and d/b/a Coastal Bend Sales, on February 6, 1978, in the amount of $950,-000.

4. The Perez Trial Court judgment was later reduced to $600,000 by the Corpus Christi Court of Appeals, payable jointly and severally by Dover Corporation and J.R. Preis, individually and d/b/a Coastal Bend Sales.

5. The $600,000 joint and several judgment by its terms drew interest in the rate of nine percent (9%) per annum from and after February 6, 1978 until paid.

6. J.R. Preis was liable for the payment of one-half (½) of the judgment ($300,000) plus post-judgment interest thereon at the rate of nine percent (9%) per annum from and after February 6, 1978 until paid.

7. The Western Casualty and Surety Company's policy issued to J.R. Preis was in effect on January 13, 1975 and the limits of the coverage as to the Perez accident was $100,000.

8. Western Casualty did not make any payments on the Perez judgment and interest accumulated thereon until October 21, 1980 at which time it paid $114,523.29 toward its obligation under the insurance contract.

9. As of October 21, 1980 (inclusive), Western Casualty and Surety Company was obligated under its insurance contract with J.R. Preis to pay its policy limits of $100,000 plus all the interest accrued on $300,000 beginning February 7, 1978 until October 21, 1980 inclusive ($73,025.31) for a total obligation due on October 21, 1980 in the amount of $173,025.31.

10. On October 21, 1980, Western Casualty paid $114,523.29 which was applied first to the then accumulated interest on the $300,000 judgment from February 7, 1978 to October 21, 1980 inclusive, in the amount of $73,025.31. The balance of the October 21, 1980 payment in the amount of $41,497.98 was credited toward the reduction of the basic $100,000 policy limits, there remained a balance due to be paid on the policy limits of $58,502.02 (i.e., $173,025.31 minus $114,523.29 equals $58,502.02).

11. After the above credits were effected, first toward accrued interest on the judgment and then toward the $100,000 policy limits, the new basis for computing Western Casualty's obligation for interest payments was $258,502.02 (the $300,000 judgment less the credit on the policy limits of $41,497.98).

12. From October 21, 1980 to November 4, 1980, Western Casualty made no further payments.

13. The interest accrued on $258,502.02 remaining unpaid on the judgment totaled $889.92 beginning October 22, 1980 to November 4, 1980 inclusive (14 days at $63.5661 per day).

14. On November 4, 1980, Western Casualty paid $9,273.61 which was first applied to the accumulated interest in the amount of $889.92 (9% per annum) on the $258,502.02 unpaid judgment balance attributable to J.R. Preis. The balance of the total of the November 4, 1980 payment in the amount of $8,383.69 ($9,273.61 less $889.92) was then applied to reduce the balance of the $100,000 policy limits remaining unpaid. There remained after the credit of $8,383.69 toward the reduction of the unpaid policy limits of $100,000 a balance of $50,118.33 ($58,502.02 minus $8,383.69).

15. The following is a summary of the interest accumulated on the judgment balance of $250,118.33 at nine percent (9%) per annum beginning November 5, 1980 to February 24, 1984 inclusive:

| | |
|---|---|
| (a) November 5, 1980 to December 31, 1980 inclusive; 57 days at $61.5045 per day | $ 3,505.76 |
| (b) Year 1981 | 22,510.65 |
| (c) Year 1982 | 22,510.65 |
| (d) Year 1983 | 22,510.65 |
| (e) January 1, 1984 to February 24, 1984 inclusive; 55 days at $61,6730 per day | 3,392.01 |
| Total interest accruing on the balance of judgment of $250,118.33 beginning November 5, 1980 to February 24, 1984 (inclusive). | $74,429.72 |

16. The $50,118.33 (unpaid policy limits through November 4, 1980) plus the $74,429.72 interest which accumulated on the entire unpaid portion of the judgment ($250,118.33) from November 5, 1980 to February 24, 1984, inclusive, totals $124,548.05.

17. The judgment against Mr. Preis, which had a balance of $250,118.33 through November 4, 1980, inclusive (the date the last payment of $9,273.61 was made by Western Casualty) continued to draw interest at the rate of $61.6730 per day until and including the date the final

judgment herein was signed on February 24, 1984.

The central issue to be determined by this appeal is what, if any, was appellant's liability to appellee in excess of the payments made by appellant totaling $123,-796.90. Liability, if any, must exist due to the application of the supplementary payment provision contained in the policy, hereinbefore set out.

In *Plasky v. Gulf Insurance Company,* 160 Tex. 612, 335 S.W.2d 581 (1960), the Supreme Court construed a substantively similar provision and held that:

> By the terms of the policy the insurer undertakes to pay all interest accruing after entry of judgment until it has paid, tendered or deposited in court that part of the judgment which does not exceed the limit of its liability thereon. The contract thus recognizes that a judgment in excess of the policy limits may be taken against the insured and shows that those who drafted the instrument knew how to differentiate between such a judgment and the company's portion thereof. *We think that in this context the agreement to pay 'all interest accruing after entry of judgment' plainly and unequivocally obligates the insurer to pay interest on the entire judgment until its part of the same has been paid, tendered or deposited in court.* (Emphasis added.)[4]

The Court expressly declined to reach the issue of whether a tender by the insurance company of the principal amount for which it is liable, exclusive of interest and costs, "would relieve the insurance company of any further obligation for interest." *Plasky,* 335 S.W.2d at 584. It is this issue which is before us today.

In its first four points of error, appellant contends that the trial court erred in applying appellant's payments to appellee, first to the interest accrued and then to the principal balance of appellant's limit of liability. Appellant argues that it was not obligated to pay any additional interest which accrued after that point in time when it tendered to appellee the limits of its liability under the policy, exclusive of costs and interests. *See Allegheny Airlines, Inc. v. Forth Corporation,* 663 F.2d 751 (7th Cir.1981); *See also Levin v. State Farm Mutual Automobile Insurance Company,* 510 S.W.2d 455 (Mo.1974); *Draper v. Great American Insurance Company,* 224 Tenn. 552, 458 S.W.2d 428 (1970); *High v. Southern Farm Bureau Casualty Insurance Company,* 247 Ark. 373, 445 S.W.2d 507 (1969).

In reaching the opposite result, the Court in *River Valley Cartage Company v. Hawkeye—Security Insurance Company,* 17 Ill.2d 242, 161 N.E.2d 101 (1959), held:

> The question must be appraised in terms of the rights of the insured against the insurer, because by this garnishment proceeding the plaintiff seeks to reach the indebtedness of the insurer to the insured. A valid tender by the debtor must be 'sufficient to cover all that the creditor then has a right to recover, whether of debt, interest or costs. If he tender less, then the tender is not good, * * *.' *Sweetland v. Tuthill,* 54 Ill. 215, 216.

> Since the insurer conceded that it was liable for some interest and costs at the time of the alleged tender, although it disputed the exact amount, it should have been clear to the insurer that it did not make a legally valid tender. While it is true that interest is a separate and distinct obligation from the judgment, the provision in the policy only makes sense if the word 'judgment' is read to include interest.

In *Home Indemnity Company v. Muncy,* 449 S.W.2d 312 (Tex.Civ.App.—Tyler 1969, writ ref'd n.r.e.), the Court applied *River Valley Cartage Company* and held that:

---

4. In reaching its determination that the provision obligated the insurer to pay interest on the entire judgment, the Court recognized and rejected authority from other jurisdictions to the contrary. *See Plasky,* 335 S.W.2d at 583, for citations to authority both in support and in conflict with that position taken by the court. *See also* 76 A.L.R.2d 983; and, Couch on Insurance 2d, Vol. 15 A, Rev. ed., § 56.37–56.39, pg. 50–58 (1983).

Since the defendant was liable for four days interest on the judgment at the time it deposited the sum of $5,000.00 into the registry of the court, it should have been clear to the defendant that it had not discharged its full liability under the terms of its Supplemental Payment's clause. While it is true that interest is a separate and distinct obligation, the policy clearly provides that the only way the company may protect itself from further liability is by satisfying the terms of the judgment. *Obviously the judgment would not be fully satisfied unless the deposit in court included the accrued interest.* We therefore hold that the deposit of $5,000.00 did not operate to determine the insurer's continuing obligation for interest on the entire $225,-000.00. *That obligation continues until satisfied.*

\* \* \* \* \* \*

As we see it, the rule does nothing more than enforce the contractual obligation which the insurance company agreed to by its contract. Consequently, we fail to see how the amount of accrued interest, whether large or small, would be material. In either case the payment would still be deficient and would not meet the requirement of the insurer's contractual obligation. (Emphasis added.)

*Inabinet v. State Farm Automobile Company,* 262 So.2d 920 (La.Ct.App.1972), and *Powell v. T.A. & C. Taxi, Inc.,* 104 N.H. 428, 188 A.2d 654 (1963), both courts reached similar results.

■ We agree with the rationale set forth in *Home Indemnity* and believe that its holding is simply a natural extension of the Supreme Court's decision in *Plasky.* The crucial determination then becomes, not to decide whether payments that are received are to be applied first either to principal or to interest, but to determine whether or not the insurer's obligation under the policy is fully satisfied by the payments tendered by it. Until the insurer has tendered its entire obligation, inclusive of costs and interest, an obligation under

terms of a policy to pay interest on the entire judgment will continue to run. As the trial court in essence found that appellant at no point satisfied its entire obligation under the contract, the court was correct in holding that interest continued to accrue. Appellant's first four points of error are overruled.

In appellant's sixth through tenth points of error, it alleges that the trial court erred in finding that the interest, on its obligation to appellee, continued to accrue after that date on which the "Perez" judgment was satisfied in full by the combined payments of both appellant and Liberty Mutual. Essentially, appellant argues that, since the judgment was satisfied in full, appellant's liability for the accrual of any additional interest, under the supplementary payments provision, terminated on the date the judgment was satisfied. We are aware of no decisions which have addressed this particular aspect concerning an insurer's liability based upon this type of provision. However, we believe that under the reasoning set forth in *Plasky, Home Indemnity* and *River Valley Cartage,* appellant's contention must be rejected. The pivotal issue becomes: who is the supplementary payment provision of the policy designed to benefit and protect?

As pointed out in *Home Indemnity,* any obligation incurred by operation of this provision is a "contractual obligation which the insurance company agreed to by its contract." 449 S.W.2d at 316. Because the insurance company has the "right to control the conduct of the suit and [the] power to escape liability for interest through payment of its part of the judgment" (*Plasky,* 335 S.W.2d 583), it is clear that the very basis for making the insurance company liable for interest *on the entire judgment* is to protect the insured from liability for additional interest and/or costs incurred because of actions taken by the insurer.

■ Evidence was presented that appellee's liability for the continuing accrual of interest on the judgment was not diminished by Liberty Mutual's act of paying off

the judgment; this action merely acted to transfer the right of collection of this accruing interest to Liberty Mutual. Furthermore, we believe that appellee's execution of a promissory note and deed of trust to Liberty Mutual simply transferred the right of collection *over to appellee.*[5] *See Travelers Indemnity Company v. Edwards,* 462 S.W.2d 533, 536 (Tex.1970). Through all of those stages, appellant has itself taken no action which would extinguish its contractual obligations under the policy. We find that the trial court was correct in holding that appellant's obligation for interest continued beyond the satisfaction of the "Perez" judgment. Appellant's sixth through tenth points of error are overruled.

■ Appellant, in his fifth point of error contends that the trial court erred in allowing pre-judgment interest at a rate of 9% per annum rather than at the rate of 6% per annum. Appellee's only entitlement to pre-judgment interest in the case at bar stems from appellant's contractual obligation to pay "post-judgment" interest accruing on the "Perez" judgment. This judgment recites that interest would accrue at the rate of 9% per annum from the date of judgment until paid. The trial court's findings (already set out herein) reflect that the trial court was merely totaling appellant's liability for interest on the "Perez" judgment at the applicable rate of interest. No pre-judgment interest is involved in the court's judgment. Appellant's fifth point of error is overruled.

In its seventeenth point of error, appellant contends that the trial court erred in awarding post-judgment interest at the rate of 10% per annum instead of 9% per annum; it contends that the court's judgment was rendered prior to the date Article 5069–1.05 (Vernon Supp.1985) was amended to increase the allowable rate of interest. Appellant argues that the 1975 version of Article 1.05 applies to this case. This version provided:

**5.** Appellee's trial pleadings are sufficient to state a cause of action to recover appellant's unpaid

Art. 1.05. Rate of judgments

All judgments of the courts of this State shall bear interest at the rate of nine percent per annum from and after the date of the judgment, except where the contract upon which the judgment is founded bears a specified interest greater than nine percent per annum, in which case the judgment shall bear the same rate of interest specified in such contract, but shall not exceed ten percent per annum, *from and after the date of such judgment.* (Emphasis added.)

Effective September 1, 1983, Article 1.05 was amended to provide in part:

Art. 5069–1.05. Rate of judgments

Section 1. All judgments of the courts of this state based on a contract that provides for a specific rate of interest earn interest at a rate equal to the lesser of:

(1) the rate specified in the contract; or

(2) 18 percent.

Sec. 2. Except as provided in Section 1 of this article, all judgments of the courts of this state earn interest at the rate published by the consumer credit commissioner in the Texas Register. The consumer credit commissioner shall compute on the 15th day of each month the judgment interest rate by taking the auction rate quoted on a discount basis for 52-week treasury bills issued by the United States government as published by the Federal Reserve Board on the most recent date preceding the date of computation. The interest rate so computed shall be the judgment rate, except that if the rate so computed is less than 10 percent, the judgment interest rate shall be 10 percent, and if it be more than 20 percent, the judgment interest rate shall be 20 percent. The rate established on that computation date shall be the interest rate on judgments for the next calendar month.

contractual obligations under the policy.

Sec. 3. (a) Except as provided by Subsection (c) of this section, judgments earn interest for the period beginning on *the day the judgment is rendered* and ending on the day the judgment is satisfied.

(b) Each judgment shall state the rate of interest to be earned on that judgment.

(c) If a case is appealed and a motion for extension of time to file a brief is granted for a party who was a plaintiff at trial, interest does not accrue for the period of extension. (Emphasis added.)

In *Coastal Industrial Water Authority v. Trinity Portland Cement*, 563 S.W.2d 916 (Tex.1978) the Court addressed a similar problem with regard to the 1975 amendment of Art. 5069–1.05. The Court held:

It is the law of this State, and the law generally, that, in the absence of any special indication or reason, a statute will not be applied retroactively, even when there is no constitutional impediment against it. Thus statutes will not be applied retroactively unless it appears by fair implication from the language used that it was the intention of the legislature to make it applicable to both past and future transactions.

\*  \*  \*  \*  \*  \*

Trinity does not actually seek a literal retroactive construction. Rather it seeks to impose the new rate only from the effective date of the amendment. Nevertheless, this construction would result in a retroactive application of the new rate if applied to judgments which had already become final.

\*  \*  \*  \*  \*  \*

We conclude that the 1975 amendment increasing the rate of interest on judgments should be applied only to judgments *rendered after the effective date of the statute.*

On July 28, 1983, the trial judge announced in open court:

THE COURT: All right, the Motion by the Plaintiff or judgment nonobstante veredicto is overruled. The Plaintiff's Mo-

tion for Severance is granted. After severance the Court will render judgment for the Plaintiff on the contractual claim based on the supplementary payments provision of the insurance policy. The Court will render judgment based on the Plaintiff's theory and in interpretation of that regard will overrule the Defendant's Motion for Judgment in that respect. Submit it.

Subsequently, the trial court conducted hearings on September 1, 1983, February 1, 1984 and February 24, 1984. A judgment was signed on January 4, 1984. The judgment was amended on several occasions. The Final Judgment on the contractual claim, as already noted, was signed on February 24, 1984.

■■■ A judgment is rendered when the decision is officially announced either orally in open court or by memorandum filed with the clerk. Here, the trial court "rendered" its judgment on July 28, 1983, a date prior to the effective date of the amended article. Therefore, post-judgment interest should be computed based upon the pre-amendment version of Art. 5069–1.-05. Appellant's seventeenth point of error is sustained.

The trial court awarded attorney's fees to appellee in his severed contractual action. The judgment further provided for certain credits in the event the judgment was not appealed to the Court of Appeals or to the Supreme Court of Texas. In its eleventh through sixteenth points of error, appellant attacks the trial court's award of attorney's fees. It contends in its thirteenth point of error that:

The District Court's Judgment and Findings and Conclusions that Preis recover attorney's fees based on the contractual claim for interest is error because: (a) there is no pleading that Preis was asking to recover attorney's fees based on the contractual claim; and (b) Preis first added a new and additional claim for attorney's fees in Plaintiff's Amended Motion for Severance and Rendition of Judgment filed on August 17, 1983, about three months after the close

of the evidence, after the jury's verdict and after Plaintiff's [first] Motion for Severance and Rendition of Judgment which made no claim for attorney's fees.

Appellant, in his fourteenth point of error, contends that the trial court erred in awarding attorney's fees because there is no evidence that appellee made any presentment and gave notice of his claim for attorney fees based upon his contractual claim, as required by TEX.REV.CIV. STAT.ANN. art. 2226 (Vernon Supp.1985).

Article 2226 provides in pertinent part:

Any person, corporation, partnership, or other legal entity having a valid claim against a person or corporation for services rendered, labor done, material furnished, overcharges on freight or express, lost or damaged freight or express, or stock killed or injured, or suits founded upon a sworn account or accounts, or suits founded on oral or written contracts, *may present the same* to such persons or corporation or to any duly authorized agent thereof; and if, at the expiration of 30 days thereafter, payment for the just amount owning has not been tendered, the claimant may, if represented by an attorney, also recover, in addition to his claim and costs, a reasonable amount as attorney's fees. (Emphasis added.)

In *Ellis v. Waldrop*, 656 S.W.2d 902 (Tex. 1983), the Court held that "In order to recover attorney fees in a suit 'founded on' a written contract under this article, a plaintiff *must plead and prove that presentment of a contract claim was made to the opposing party and that the party failed to tender performance*". (Emphasis added.)

No particular form of presentment is required. Article 2226 is to be liberally construed to promote its underlying purposes. The purpose of the requirement of presentment is to afford a party against whom a claim is being asserted, an opportunity to pay that claim and avoid incurring an obligation for attorney's fees. *Ashford Development, Inc. v. USLife Real Estate Services Corporation*, 661 S.W.2d

933 (Tex.1984); *Jones v. Kelley*, 614 S.W.2d 95 (Tex.1981).

It is firmly established in Texas that a pleading without proof will not sustain a judgment. *Stone v. Boone*, 160 S.W.2d 578 (Tex.Civ.App.—Fort Worth 1942, writ ref'd); *Hartford Accident & Indemnity Co. v. Moore*, 102 S.W.2d 441 (Tex.Civ.App.—Dallas 1937, writ ref'd); *Farm & Home Savings and Loan Association v. Muhl*, 37 S.W.2d 316 (Tex.Civ.App. —Waco 1931, writ ref'd). In a suit to recover attorney's fees in a suit on a contract under art. 2226, it is necessary for the plaintiff to allege and prove that he presented his claim arising under the contract to the defendant at least 30 days prior to the *rendition* of judgment, and that the defendant refused to pay the claim. *Manges v. Mustang Oil Tool, Inc.*, 658 S.W.2d 725 (Tex.App.—Corpus Christi 1983, writ ref'd n.r.e.); *European Import Co., Inc. v. Lone Star Co., Inc.*, 596 S.W.2d 287 (Tex. Civ.App.—Houston [1st Dist.] 1980, writ ref'd n.r.e.); *Harvey v. Pedigo Oil Co., Inc.*, 557 S.W.2d 167 (Tex.Civ.App.—Fort Worth 1977, writ ref'd n.r.e.); *El Paso Mld. & Mfg. Co., Inc. v. Southwest For. Ind., Inc.*, 492 S.W.2d 331 (Tex.Civ.App.—El Paso 1973, writ ref'd n.r.e.)

Neither the filing of a suit on a claim arising out of a contract nor the allegation of a demand in the pleadings can constitute a presentment of a claim or a demand that the claim be paid within the meaning of art. 2226. *Huff v. Fidelity Union Life Insurance Company*, 158 Tex. 433, 312 S.W.2d 493 (1958); *Manges v. Mustang Oil Tool Col., Inc.*, 658 S.W.2d at 730; *Watson Elec. Supply Co. v. Warren*, 597 S.W.2d 538 (Tex.Civ.App.—Waco 1980, no writ).

Contained in what appellee entitled "COUNT NO. 1—INSURANCE CONTRACT" of his Second Amended Original Petition is the following allegation:

The Defendant, The Western Casualty and Surety Company, *has refused to honor its monetary, contractual obligations to this date* (April 25, 1983) in

the amount of $105,789.96 to or on behalf of the Plaintiff, J.R. Preis, as a credit against the personal judgment he is obligated to pay under the judgment in the amount of $305,790.62 as of April 25, 1983, which increases at the rate of $61.66 each day until paid. (Emphasis added.)

Contained in what appellee entitled "COUNT NO. 4—EXEMPLARY DAMAGES" of this same petition is the following:

b. Because of the negligent, willful and/or arbitrary conduct of the Defendant, The Western Casualty and Surety Company, and its willful and conscious disregard for the best interest of its insured, Plaintiff, J.R. Preis, Mr. Preis is entitled to recover, over and above his actual damages, exemplary damages against the Defendant, The Western Casualty and Surety Company, including reasonable attorney's fees he has been required to expend in this cause, in the amount of $100,000.[6]

The record reveals that on May 16, 1977, Mr. Walter L. Brown of the Law Office of Gary Leland Brown, on behalf of appellee, wrote a letter to the attorney who had been hired by appellant to defend appellee in the Perez case. That letter, in pertinent part, stated:

"... Mr. Preis hereby demands that Western Casualty make an immediate tender of $100,000 to the attorney's for Plaintiff as settlement of the above matter ..."

■ Another demand letter was written by John J. Pinchinson, an attorney, to the attorney who had been hired by appellant to defend appellee in the Perez case. This letter was written on behalf of appellee and was dated January 21, 1978. It reads as follows:

Re: Cause NO. 75–3640–0

Sylvia Perez, et al.

v.

Dover Corporation, et al.

This demand letter is being written pursuant to the "Stower's Case".

I am herewith attaching a copy of a written offer from the attorneys representing the plaintiff in the above cause. You will note from such letter, that the cause of action against James Preis can be settled for One Hundred Twenty-Five Thousand Dollars (125,000).

In view of all the circumstances, Mr. Preis hereby demands that you make tender of the full sum of coverage under his policy of insurance, that is, a sum of One Hundred Thousand Dollars ($100,000). Mr. Preis will contribute the sum of Twenty-Five Thousand Dollars ($25,000) in order to make the One Hundred Twenty-Five Thousand Dollars ($125,000) settlement. It is our feeling that if said case is not settled, there is great danger of a judgment being rendered in this cause against Mr. Preis for a sum greater than the One Hundred Twenty-Five Thousand Dollar ($125,000) offer.

In the event you do not see fit to tender full policy limits herein demanded, and judgment for an amount greater than the One Hundred Twenty-Five Thousand Dollar ($125,000) should result against Mr. Preis, we intend to hold the Western Casualty and Surety Company responsible and accountable for such greater amount.

Even were we to liberally construe the language in appellee's trial pleadings, that appellant "has refused to honor its monetary, contractual obligations to this date," to imply a presentment of appellee's claim, this allegation would not constitute acceptable proof of presentment. Further, we have reviewed the evidence presented at

---

6. Appellee, for the first time, expressly alleged both presentment and a demand for attorney's fees on the contractual claim in his Amended Motion for Severance and Rendition of Judgment for Plaintiff on Insurance Contract. This motion was filed with the trial court on August 17, 1983. As we have already pointed out, the trial court orally rendered judgment on the contractual claim on July 28, 1983.

trial and find no evidence in the record to show that a legally sufficient presentment for attorney's fees, in the contractual claim, was actually made.

The record establishes that trial on the "Perez" cause of action began on January 23, 1978. The jury returned its verdict on January 24, 1978. Judgment was rendered in the cause on February 6, 1978. The very nature of appellee's cause of action now before us (the contractual action) revolves around the accumulation of interest on the "Perez" judgment. Interest on that judgment could not accrue until after the judgment itself was rendered, which occurred on February 6, 1978. While appellee's demands to appellant that it settle prior to rendition of any judgment in the "Perez" action would support a demand for the negligence action, we see no way they can be stretched to include a demand for payment of a debt not yet owed. The demands (presentments) in the aforesaid letters apply only to the negligence action, which is not before us in this appeal. They do not constitute demands (presentments) with respect to the contractual action.[7]

We have examined the record and find it void of any evidence that presentment on the contractual claim was made in accordance with Art. 2226. Accordingly, appellant's fourteenth point of error is sustained.

In light of our disposition of appellant's fourteenth point of error, we need not address appellant's eleventh, twelfth, thirteenth, fifteenth and sixteenth points of error. Tex.R.Civ.P. 451 (Vernon Supp. 1985).

The judgment of the trial court is reformed to delete the award of attorney's fees. The judgment is also reformed to allow post-judgment interest at the rate of 9 percent.[8] As reformed, the judgment is affirmed.

REFORMED, and as REFORMED, AFFIRMED.

---

7. We also note that both letters only seek payment from appellant in the amount of $100,000. The record clearly shows that payment in excess of that amount was made prior to both appellee's filing suit on the contractual claim and the rendition of final judgment in this cause. As payment was made in the amount sought by the alleged "contractual demand letters", appellee would have then needed to make an additional demand to apprise appellant of any further claim, i.e. the demand for additional unpaid interest.

8. While we do not sanction the trial court's actions in awarding post-judgment interest *both* on its judgment of $124,548.05 *and* on the sum of $250,118.33 (The amount of principal it found still bearing interest under the "Perez" judgment), no point of error is directed toward this double recovery of interest and we are restrained from addressing this issue.